ROZANKOVICH v KALAMAZOO SPRING CORPORATION

1. UNEMPLOYMENT COMPENSATION—MATERNITY—LEAVE OF ABSENCE.
   A female employee on a maternity leave of absence will be
   treated as "unemployed" for the purpose of the Employment
   Security Act, and therefore eligible for unemployment benefits,
   unless an agreement between the employer and the union
   which provides for maternity leaves of absence is mandatory or
   a request for leave is submitted by the employee (MCLA
   421.48).

2. UNEMPLOYMENT COMPENSATION—LABOR RELATIONS—MODIFICATION
   OF AGREEMENT.
   Employment Security Appeal Board erred in considering a "mem-
   orandum of understanding" which construed a collective bar-
   gaining agreement as obligating certain employees to accept a
   leave of absence, without first considering whether the union
   representative who signed the memorandum was authorized to
   modify the collective bargaining agreement.

Appeal from Ingham, Sam Street Hughes, J.
Submitted Division 2 October 12, 1971, at Detroit.
(Docket No. 10884.) Decided July 10, 1972. See 44
Mich App 426 for opinion on rehearing.

Evelyn Rozankovich presented her claim for
unemployment benefits against her employer, Ka-
lamazoo Spring Corporation. Benefits denied. The
plaintiff appealed to circuit court. Affirmed. Plain-
tiff appeals. Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retire-
    ment Funds §§ 34, 35.
    Leaving employment, or unavailability for particular job or duties,
      because of sickness or disability, as affecting right to unemploy-
      ment compensation, 14 ALR2d 1308.
[2] 48 Am Jur, Social Security, Unemployment Insurance, and Retire-
    ment Funds § 43.

*Stephen I. Schlossberg, John A. Fillion, Jordan Rossen,* and *Stanley Lubin,* for plaintiff on appeal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

Before: LEVIN, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

PER CURIAM. Plaintiff, Evelyn Rozankovich, was employed by the Kalamazoo Spring Corporation. She became pregnant and her employer required that she take a leave of absence at the end of the fifth month of her pregnancy although she was able and willing to work. She now appeals from a judgment of the circuit court affirming an order of the Employment Security Appeal Board denying unemployment benefits. The Employment Security Commission, not the employer, files a brief in opposition to her appeal.

The circuit court and the appeal board found that Mrs. Rozankovich was not unemployed within the meaning of the act because she was sent home on a leave of absence pursuant to the terms of an agreement between the employer and the union.

We reverse because it has not been shown that the collective bargaining agreement between the employer and the union obligated Mrs. Rozankovich to accept against her will a leave of absence which she did not request.

Section 48 of the Employment Security Act provides in relevant part:

"An individual shall not be deemed to be unemployed during any leave of absence from work granted by an employer either at the request of the individual or

pursuant to an agreement with his duly authorized bargaining agent, or in accordance with law." MCLA 421.48; MSA 17.552.

Section 14(C) of article IV of the agreement between the employer and the union provides that a female employee *"may secure* a maternity leave of absence not to exceed nine (9) months", and that "such maternity leave shall start not later than the fifth (5th) month of pregnancy". (Emphasis supplied.)

The entire text of § 14 of the agreement is set forth in the margin.[1] Reading § 14 of the agree-

---

[1] *"Section 14.* (A) Employees may be granted a temporary leave of absence without loss of seniority for good cause for period of time up to thirty (30) days. Application for such leave shall be made to the Company and the Union. No such leave shall be valid unless approved by both the management and bargaining committee of the Union. This leave of absence may be extended for similar periods upon approval of management and the Union.

"(B) An automatic sick leave shall be granted employees who are unable to work because of illness. When required by the Company and the bargaining committee or when absence extends beyond eight (8) days, such employees will be required to furnish doctor's statements stating necessity for such leave and when they are able to return to work. During all leaves of absence under Section 14, seniority shall be accumulative.

"(C) Maternity Leave.
Upon submitting satisfactory proof (doctor's certificate) of their pregnancy, female employees may secure a maternity leave of absence not to exceed nine (9) months; such maternity leave shall start not later than the fifth (5th) month of pregnancy. A leave of absence granted under this section shall be granted without loss of seniority. The employee shall furnish a doctor's certificate stating fitness to return to work at expiration of leave.

"(D) Special leave of absence.
Employees within the bargaining unit who are requested by the Company, and who agree to such transfer, may be temporarily transferred to another plant of the corporation or to assist the corporation in working out production or engineering problems. Employees so transferred shall be granted a special leave of absence during such period and seniority shall accumulate during such leave of absence. It is understood and agreed that the Union shall be notified, in writing, of all such leaves granted under this section.

"(E) Any employee being accepted for the Peace Corps shall be given a leave of absence and seniority shall be accumulative while working for the Peace Corps provided this leave does not exceed three (3) years."

ment as an entirety, it is clear that the drafters of the agreement employed the words "may" and "shall" in the ordinary sense in which those terms are used—"may" as permissive, and "shall" as mandatory. In subparagraphs (A), (B), (D) and (E) the operative words clearly refer to the employer:

—Employees "unable to work because of illness", temporarily transferred employees, and employees who are accepted for the Peace Corps "shall" be granted leaves of absence under subparagraphs (B), (D) and (E) of § 14. The causes stated —disabling illness, transfer, and enrollment in the Peace Corps—leave no room for choice by the employer; it must grant leave.

—A temporary leave of absence "for good cause" "may be granted" by the employer. The intention that the employer not be compelled to grant leave is conveyed by the word "may".

The language of subparagraph (C) is somewhat different, for the language here refers to the employee—"female employees *may secure*". We must conclude that in the context of § 14 this gives the *employee* the *option* of *"securing"* leave of absence, if one is desired, by submitting a doctor's certificate to the employer as proof of pregnancy.

Subsequent to the appeal board's decision, the Michigan Employment Security Commission issued a formal interpretation of the relevant statutory language. It is there stated that an employee will be treated as "unemployed" for the purposes of the act unless the agreement between the employer and the union which it is asserted provides for a compulsory leave of absence is a "firm directive and mandatory in the pertinent situation" *or* a request for the leave of absence is submitted by the employee.[2]

---

[2] "Many union agreements provide that a leave of absence *will be*

Mrs. Rozankovich did not request a leave. The collective bargaining agreement between her union and her employer cannot properly be described as containing a firm directive, mandatory in the pertinent situation.

After the agreement between the union and the employer was signed, a question arose concerning the meaning of the contract language regarding pregnancy leaves of absence and a memorandum of understanding was signed by the employer and the *local* union. The appeal board referred to this document in its opinion as evidence that the parties to the collective bargaining agreement intended a mandatory leave of absence.[3]

---

*granted automatically* to an employee known to be incapacitated, and may further provide that a leave *will be granted for certain personal reasons* such as death in the immediate family, or that *upon request a leave will be granted* to utilize a specialized skill which is not currently being used but which can be used by another employer. The union agreement must provide a directive, such as that the leave 'will', 'shall' or 'must' be given or taken, in order to be considered as *required* 'pursuant to an agreement with his duly authorized bargaining agent.' The term 'union agreement' as used in this section includes duly executed written supplementary agreements, if any, which may expand or clarify the original expression of the parties. It must be a firm directive and mandatory in the pertinent situation. However, some union agreements have provisions for the granting of a leave of absence which are entirely permissive instead of 'mandatory' and it then becomes necessary to establish whether the claimant requested the leave." MESC Manual, § 6578, Rev 2/15/71. (Emphasis by the MESC.)

3. "It is agreed between union and management that the mandatory maternity leave for Michelle Cochran and Vera Griffith be extended from the end of the fifth (5th) month to the end of their seventh (7th) month, or as instructed by their doctors.

"It is further agreed that these cases were unusual because of contract misunderstanding, and that future leaves due to pregnancy must begin not later than the end of the fifth (5th) month according to contract.

/S/ R. E. Thomas
For the Company

/S/ Louie Reed
For the Union

"April 26, 1968."

The memorandum of understanding was not offered in evidence during the hearing before the referee. We might overlook that record deficiency since it appears undisputed that the memorandum was in fact signed in behalf of the employer and the local union.

Mrs. Rozankovich disputes, however, the authority of the local union to modify the collective bargaining agreement without the consent of the parent union.[4]

The appeal board erred in considering the memorandum of understanding in deciding whether Mrs. Rozankovich was obliged to accept a leave of absence without taking evidence and considering the question whether the person who signed in behalf of the local union was authorized to enter into an agreement modifying or construing the collective bargaining agreement and to bind Mrs. Rozankovich in that regard.

Until the issue of the correct construction of the agreement is properly resolved, we see no need to address ourselves to the other issues raised by the parties regarding § 48 of the act.

The Attorney General of Michigan has ruled that § 28(1)(c)[5] of the Michigan Employment Security Act is unconstitutional, and we have been advised that the Employment Security Commission accepts his decision. Accordingly, we do not consider the constitutionality of that section of the act.

Remanded to the Employment Security Appeal Board for further proceedings consistent with this opinion.

---

[4] The collective bargaining agreement is an agreement between the Kalamazoo Spring Corporation, on the one hand, and the International Union, United Automobile Aerospace and Agricultural Implement Workers of America, affiliated with the AFL-CIO, and its Local 1019, on the other hand.

[5] MCLA 421.28(1)(c); MSA 17.530(1)(c).